1  ROBERT S. BREWER, JR.
   United States Attorney
2  Lawrence A. Casper
   Assistant United States Attorney
3  California Bar No. 235110
   DEBORAH L. CONNOR
4  Chief, Money Laundering & Asset
   Recovery Section, Criminal Division
5  Mark A. Irish
   Senior Trial Counsel
6  P.R. Bar No. 209107
   Federal Office Building
7  880 Front Street, Room 6293
   San Diego, California 92101-8893
8  Telephone: (619) 546-6734
   Email: Lawrence.Casper@usdoj.gov
9  Email: Mark.Irish2@usdoj.gov

10 Attorneys for United States of America



**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, | Case No. 15CR950-BEN |
|---|---|
| Plaintiff, | |
| v. | PLEA AGREEMENT |
| BIANCA ACEDO-OJEDA, | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, ROBERT S. BREWER, JR., United States Attorney, Lawrence A. Casper, Assistant United States Attorney, Deborah L. Connor, Money Laundering & Asset Recovery Section and Mark A. Irish, Senior Trial Counsel, Money Laundering & Asset Recovery Section, Criminal Division, and Defendant BIANCA ACEDO-OJEDA, with the advice and consent of Matthew J. Lombard, counsel for Defendant, as follows:

I

**THE PLEA**

Defendant agrees to plead guilty to Count One of the Third Superseding Indictment charging Defendant with:

> knowingly combining, conspiring, and agreeing with other persons to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, including:
>
> a.   to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, the distribution of Controlled Substances, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and
>
> b.   to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, that is, the distribution of Controlled Substances, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i) and (h); and Title 18, United States Code, Section 2.

II

**NATURE OF THE OFFENSE**

A.   ELEMENTS EXPLAINED

The offense to which Defendant is pleading guilty has the following elements:

1. There was an agreement between two or more persons to knowingly and intentionally combine, conspire, and agree with others to transport, transmit, or transfer, or attempt to transfer, transmit or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States;

2. Defendant became a member of the conspiracy knowing of the objective to transport, transmit, or transfer, or attempt to transfer, transmit or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States and intending to help accomplish that object;

3. The monetary instrument or funds involved in the transportation, transmission or transfer represented the proceeds of a specified unlawful activity, namely a conspiracy to import cocaine, methamphetamine and heroin into the United States in violation of 21 U.S.C. §§ 952, 960 and 963 (for concealment money laundering);

4. Defendant knew that the monetary instrument or funds involved in the transportation, transmission or transfer represented proceeds of some form of unlawful activity (for concealment money laundering)

5. Defendant knew that the transportation, transmission or transfer was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity. (For concealment money laundering); and

6. Defendant knew that the transportation, transmission or transfer was designed in whole or in part to promote the carrying on of specified unlawful activity. (For promotion money laundering).

B. **ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS**

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crime and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1. From in or about August 2013 until in or about November 2015, Defendant helped to manage a family-owned currency exchange house in Culiacan, Sinaloa, Mexico that received the smuggled proceeds from the sales of illegal narcotics in the United States. As part of the money laundering organization, (hereafter "MLO") Defendant knew that these smuggled proceeds, in the form of U.S. bulk currency, were from the importation and trafficking of illicit narcotics, including cocaine, heroin and methamphetamine, into and within the United States. The amount of the U.S. bulk currency received and laundered under Defendant's direction was approximately $15,000,000.

2. This activity was part of an agreement by Defendant and others to transport, transmit, or transfer, these monetary instruments or funds from locations within the United States to Mexico. Defendant worked with other MLO members to coordinate couriers who smuggled the currency from the United States to Mexico (hereafter "the southbound couriers") and to ensure that they picked up the currency from the correct sources in the United States, those sources being primarily in Southern California. Defendant converted much of the U.S. bulk currency into pesos and transferred those funds to drug traffickers in Mexico. Defendant knew that the transportation, transmission or transfer of these funds was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the illicit narcotics importation and trafficking. Defendant also knew that the transportation, transmission or transfer was designed to promote the carrying on of specified unlawful activity, that is, drug trafficking.

3. The cocaine, methamphetamine and heroin were smuggled into the United States from Mexico by the associated drug trafficking organization ("DTO") which was a part of, or affiliated with, the Sinaloa Cartel.

4.  During the period described above, Defendant was lawfully intercepted over multiple telephones exchanging text and voice messages with other co-conspirators. Those messages were frequently coded as part of Defendants' and her co-conspirators' efforts to evade law enforcement.

5.  During November 2013, Defendant and several others coordinated the transport of $306,975 in bulk U.S. currency from the United States to Mexico. Defendant and co-defendant Gibran Rodriguez-Mejia planned to direct two others to pick up the currency in Southern California and bring it to an exchange house in Tijuana belonging to co-defendant Cesar Hernandez-Martinez with the understanding that at least a portion of those funds would flow back to Defendant's exchange house in Culiacan.

6.  On October 10, 2013, law enforcement lawfully intercepted electronic communications between Defendant and co-defendant Roberto Gallegos-Lechuga that showed that this co-defendant arranged to have one of his couriers deliver bulk U.S. currency to one of Defendant's couriers. Although the co-defendant believed the amount to be $350,000 U.S. dollars, when the courier delivered the money to Mexico, it was determined to be $309,975. Intercepted communications showed that the two had previously had similar dealings.

## III

## **PENALTIES**

The crime to which Defendant is pleading guilty carries the following penalties:

A.  a maximum 20 years in prison, pursuant to 18 U.S.C. § 1956(a)(2)(B);

B.  a maximum $500,000 fine or twice the value of the monetary instrument or funds involved in the transportation, transmission or transfer, whichever is greater, pursuant to 18 U.S.C. § 1956(a)(2)(B);

C.  a mandatory special assessment of $100 per count, pursuant to 18 U.S.C. § 3013(a)(2)(A); and

D.   a term of supervised release of not more than three (3) years, pursuant to 18 U.S.C. § 3583(b)(2). Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon any such revocation, all or part of the statutory maximum term of supervised release for the offense that resulted in such term of supervised release.

## IV
## DEFENDANT'S WAIVER OF TRIAL RIGHTS AND UNDERSTANDING OF CONSEQUENCES

This guilty plea waives Defendant's right at trial to:

A.   Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

B.   A speedy and public trial by jury;

C.   The assistance of counsel at all stages;

D.   Confront and cross-examine adverse witnesses;

E.   Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F.   Not testify or have any adverse inferences drawn from the failure to testify.

G.   Defendant has been advised by counsel and understands that because defendant is not a citizen of the United States, defendant's conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future.

## V

### DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

Any information establishing the factual innocence of Defendant known to the undersigned prosecutor in this case has been turned over to Defendant. The Government will continue to provide such information establishing the factual innocence of Defendant.

If this case proceeded to trial, the Government would be required to provide impeachment information for its witnesses. In addition, if Defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. By pleading guilty Defendant will not be provided this information, if any, and Defendant waives any right to this information. Defendant will not attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

## VI

### DEFENDANT'S REPRESENTATION THAT GUILTY PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A.  Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. By pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. The conviction in this case may subject Defendant to various collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, none of which can serve as grounds to withdraw Defendant's guilty plea.

B.  No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because Defendant is guilty and for no other reason.

## VII

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF CALIFORNIA and MONEY LAUNDERING & ASSET RECOVERY SECTION

This plea agreement is limited to the United States Attorney's Office for the Southern District of California and the Money Laundering & Asset Recovery Section, Criminal Division, and cannot bind any other authorities in any type of matter, although the Government will bring this plea agreement to the attention of other authorities if requested by Defendant.

## VIII

## APPLICABILITY OF SENTENCING GUIDELINES

The sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). In imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory. The Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. The sentence cannot be determined until a presentence report is prepared by the U.S. Probation Office and defense counsel and the Government have an opportunity to review and challenge the presentence report. Nothing in this plea agreement limits the Government's duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The sentence is within the sole discretion of the sentencing judge who may impose the maximum sentence provided by statute. It is uncertain at this time what Defendant's sentence will be. The Government has not made and will not make any representation about what sentence Defendant will receive. Any estimate of the probable sentence by defense counsel is not a promise and is not binding on the Court. Any recommendation by the Government at sentencing also is not binding on the Court. If the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant will not withdraw the plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

A.  SENTENCING GUIDELINE CALCULATIONS

Although the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

| | | |
|---|---|---:|
| 1. | Base Offense Level pursuant to § 2S1.1(a)(2) | 8 |
| 2. | BOL increased under § 2B1.1(K) | +20 |
| 3. | BOL increased under § 2S1.1(b)(1)(i) | +6 |
| 4. | BOL increased under § 2S1.1(b)(2)(C) | +4 |
| 5. | Expedited Resolution/Combo of Circs. § 5K2.0 | -2 |
| 7. | BOL decreased for Acceptance of Responsibility under § 3E1.1 | -3 |
| | Total adjusted offense level | 33 |

B. ACCEPTANCE OF RESPONSIBILITY

Despite paragraph A above, the Government need not recommend an adjustment for Acceptance of Responsibility if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1. Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;
2. Falsely denies prior criminal conduct or convictions;
3. Is untruthful with the Government, the Court or probation officer; or
4. Breaches this plea agreement in any way.

C. FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

Defendant may request or recommend additional downward adjustments, departures, or variances from the Sentencing Guidelines under 18 U.S.C. § 3553. The Government will oppose any downward adjustments, departures, or variances not set forth in Section X, paragraph A above.

D. NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY

The parties have **no** agreement as to Defendant's Criminal History Category.

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION

The facts in the "factual basis" paragraph of this agreement are true and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

F. **PARTIES' RECOMMENDATIONS REGARDING CUSTODY**

The Government will recommend that Defendant be sentenced to the low end of the advisory guideline range recommended by the Government at sentencing.

G. **SPECIAL ASSESSMENT/FINE**

1. **Special Assessment**

The parties will jointly recommend that Defendant pay a special assessment in the amount of $100.00 per felony count of conviction to be paid forthwith at time of sentencing. Special assessments shall be paid through the office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

2. **Fine**

The parties will not recommend imposition of a fine due to Defendant's limited financial prospects and because the cost of collection, even taking into account the Inmate Responsibility Program, likely would exceed the amounts that could reasonably be expected to be collected.

H. **SUPERVISED RELEASE**

If the Court imposes a term of supervised release, Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least two thirds (2/3) of the term of supervised release and has fully paid and satisfied any special assessments, fine, criminal forfeiture judgment, and restitution judgment.

## XI

## DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order. The ony exception is that Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective counsel.

## XII

## BREACH OF THE PLEA AGREEMENT

Defendant and Defendant's attorney know the terms of this agreement and shall raise, before the sentencing hearing is complete, any claim that the Government has not complied with this agreement. Otherwise, such claims shall be deemed waived (that is, deliberately not raised despite awareness that the claim could be raised), cannot later be made to any court, and if later made to a court, shall constitute a breach of this agreement.

Defendant breaches this agreement if Defendant violates or fails to perform any obligation under this agreement. The following are non-exhaustive examples of acts constituting a breach:

1. Failing to plead guilty pursuant to this agreement;
2. Failing to fully accept responsibility as established in Section X, paragraph B, above;
3. Failing to appear in court;
4. Attempting to withdraw the plea;
5. Failing to abide by any court order related to this case;

Plea Agreement    12    Def. Initials AB
15CR950-BEN

6. Appealing (which occurs if a notice of appeal is filed) or collaterally attacking the conviction or sentence in violation of Section XI of this plea agreement; or

7. Engaging in additional criminal conduct from the time of arrest until the time of sentencing.

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the Government will be relieved of all its obligations under this plea agreement. For example, the Government may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the Government may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges). In addition, the Government may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the Government's pursuit of remedies for Defendant's breach.

Additionally, if Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a

Plea Agreement 13 Def. Initials _AB_
15CR950-BEN

breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the Government, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

### CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

### DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it (or that it has been read to Defendant in Defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

## XV

## **DEFENDANT SATISFIED WITH COUNSEL**

Defendant has consulted with counsel and is satisfied with counsel's representation. This is Defendant's independent opinion, and Defendant's counsel did not advise Defendant about what to say in this regard.

ROBERT S. BREWER, JR.
United States Attorney

DATED 12-14-20

Lawrence A. Casper
Assistant U.S. Attorney

DEBORAH L. CONNOR
Chief, Money Laundering & Asset Recovery Section

DATED 12-14-20

for Mark A. Irish
Money Laundering & Asset Recovery Section

DATED 11-28-20

Matthew J. Lombard
Defense Counsel

**IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" SECTION ABOVE ARE TRUE.**

11-28-2020
DATED

BIANCA ACEDO-OJEDA
Defendant

Plea Agreement

15

Def. Initials AOB
15CR950-BEN